# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| PARCEL ONE PHASE ONE ASSOCIATES, L.L.P., <br> 401 K Street, N.W., <br> Washington, D.C. 20001 <br><br> Plaintiff, <br><br> v. <br><br> DISTRICT OF COLUMBIA, <br>   Serve:  Mayor Muriel Bowser <br>   1350 Pennsylvania Avenue, N.W. <br>   Suite 600 <br>   Washington, D.C.  20004, <br><br>   Serve:  Karl Racine, Esq. <br>   Registered Agent, District of Columbia <br>   441 4th Street, N.W. <br>   Suite 600 South <br>   Washington, D.C. 20001, <br><br>   Serve:  Office of Risk Management <br>   Attn:  Claims <br>   441 4th Street, N.W. <br>   Suite 800 South <br>   Washington, D.C. 20001, <br><br> Defendant. | Civil Action No. 15-369 |

## COMPLAINT FOR DECLATORY & INJUNCTIVE RELIEF

1.  **Parcel One Phase One Associates, L.L.P.** ("Parcel One"), by its undersigned counsel, brings this Complaint against the District of Columbia because the District of Columbia has enacted legislation which deprives Parcel One of both substantive and procedural due process rights in violation of the Fifth Amendment of the United States Constitution, and alleges as follows:

## PARTIES

a.  Parcel One is a District of Columbia limited liability partnership which owns the land and improvements consisting of an 302-unit apartment building located at 401 K Street, N.W., Washington, D.C. 20001 (the "Property").

b.  Defendant District of Columbia is a municipal corporation.

## JURISDICTION

2.  This action is for declaratory and injunctive relief brought pursuant to 42 U.S.C. § 1983. This Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1343.

## VENUE

3.  Pursuant to 28 U.S.C. § 1391(c), venue is proper in the District in which this Complaint is filed because the events and omissions giving rise to this claim have occurred and are occurring within the District of Columbia.

## FACTUAL BACKGROUND

1.  The Museum Square Apartments was built by the Bush Companies in 1978 and, since that time, has been owned by affiliate Parcel One. The property is located in the Mount Vernon district of the District of Columbia and has been subject to Project Based Section 8 Housing Assistance Payment Contract with the United States Department of Housing and Urban Development since its construction 37 years ago. In October 2014, tenants were informed that Parcel One provided HUD with official notification that it intends to opt out of the Project Based Section 8 Housing Assistance Payments Contract effective October 1, 2015.

2.  The Bush Companies are in the business of developing, designing, building, and operating multifamily residential, mixed use, and commercial communities throughout the southeastern United States and in particular the District of Columbia and Virginia.

3. Over the years, the Bush Companies have participated in the development and construction of tens of thousands of residential units, specifically apartments and condominium units.

4. Among the residential complexes the Bush Companies have developed, built, and, in many cases, managed in the District of Columbia are The Lincoln Condominiums, The 2020 Lofts Condominium, Cavalier Apartments, Temple Court Apartments, 200 K Street Apartments, Connecticut Avenue Apartments, Mount Vernon Plaza Apartments, and the property which was the impetus for the legislative action which is the subject of this lawsuit, namely Museum Square Apartments, The Bush Companies have also developed, built and designed numerous apartment and condominium projects in nearby Northern Virginia.

5. The Museum Square property is relatively rare in that it is located in the Downtown Development zoning district where the Zoning Regulations do not require the incorporation of any Inclusionary Zoning units on the site. Moreover, given that Parcel One will be developing a residential development on the site, there is no maximum FAR limitation applicable to the site, thereby allowing the site to be developed to maximize the residential density on the site, as a matter of right, so long as applicable zoning regulations are complied with.

6. The Bush Companies' development team, particularly team members Andrew Viola and Michelle Ball, has studied the District of Columbia housing market in the vicinity of Museum Square for nearly 10 years. During that time it closely followed valuation trends with respect to neighborhood properties, including the recent development of the Meridian at Mount Vernon Triangle and City Center.

7. The development team has worked together for approximately twenty-five years and has prepared development/construction cost estimates and profit projections for numerous properties. In doing so, it takes a conservative approach to costs and to investment return. As a result, its development value analyses have been accurate in the vast majority of the projects the Bush Companies have developed during that time.

8. The development team constructed an analysis of the number of apartments (450) and condominium units (350) and parking spaces which could conservatively be developed on the Property, the development and construction costs of the Property, the sales prices of the condominiums and the rental capitalization rate of the apartments, and concluded, based on their experience, that the 350 condominiums, conservatively, had a residual development value of approximately $119 million ($350,000/unit) and the 450 apartments had a value of approximately $131 million ($291,000/unit). These amounts represent the value of the property to Parcel One for its intended purpose, as a matter of right, that being the development of a residential complex containing a minimum of 450 apartments and an estimated 350 condominium units as is Parcel One's right under existing zoning laws.

9. Accordingly, on June 6, 2014, an offer of sale was presented to the tenants in the amount of $250,000,000. The offer was Parcel One's objective good faith and fair analysis of the residual value of the property based on the property's intended use. Parcel One received the Association's registration with the District of Columbia Department of Housing and Community Development (" DHCD") on July 24, 2014. The tenants never accepted that offer, attempted to negotiate any different sale price with Parcel One, or provided a counteroffer to Parcel One's offer of sale.

10. Beginning on July 1, 2014, Ms. Lauren Pair of DHCD, Housing Regulation Administration Rental Conversion and Sale Division (the "Division"), began an inquiry over whether the $250,000,000 offer was a bona fide offer of sale. Ultimately, after DHCD took into consideration Parcel One's analysis, legal precedent, and an appraisal which counsel for Parcel One obtained from CBRE, Inc., DHCD decided to discontinue its inquiry.

11. Subsequent to Parcel One's submission of an offer of sale, the District of Columbia City Council undertook several legislative initiatives specifically targeted to directly stopping in its tracks, Parcel One's development of Museum Square. In this regard, a number of actions took place in September 2014. On September 23, 2014, the City Council approved a resolution (R20-609) entitled the "Tenant Opportunity to Purchase Emergency Declaration Resolution of 2014."  The stated purpose of the resolution was to "declare the existence of an emergency with respect to the need to amend the Tenant Opportunity to Purchase Act of 1980 to clarify the tenant opportunity to purchase in the case of the sale of multi-unit housing for the purposes of demolition or notice of discontinuance of housing use." In the resolution, the City Council specifically described Museum Square as the reason for the legislation, and in doing so stated as follows:

> "(b) On July 10 of this year, it was learned that the owner of a 302 unit, project-based Section 8 housing accommodation is selling this property. Pursuant to the Tenant Opportunity to Purchase Act, the owner offered the property to the tenants to purchase. The purchase price: $250,000,000.00, more than 7 times the assessed value of $36,000,000.00.
>
> "(c) For the right of tenants to purchase their homes under the Tenant Opportunity to Purchase Act to be more than a charade, for it to be a bona fide offer as the law intended, and owner's offered sale price must be fair and genuine.
>
> "(d) Given the imminent loss of these 302 subsidized housing units, and, at the same time, the effort to house 500 currently

homeless families falling short, it is imperative that the Council act immediately to amend the Tenant Opportunity to Purchase Act to set reasonable parameters and define what a bona fide offer means."

12. On that same date, September 23, 2014, the same City Council members who introduced the resolution, namely Chairman Phil Mendelson and Council member David A. Catania, also introduced a bill entitled "Tenant Opportunity to Purchase Emergency Act of 2014," which bill was passed and signed into law on October 7, 2014 as Act No. A20-0434. The Act purports to change the law with respect to what "appraised value" means and what a bona fide offer of sale means and gives the tenants the power to drive down the price of a housing accommodation. In this regard, the bill seeks to amend Section 402 (a) of TOPA, and to do so <u>retroactively</u> backed to January 1, 2014 (no doubt to capture the Museum Square transaction), although outside of the statement, "Beginning January 1, 2014, before an owner may sell an accommodation…," there is no colloquy regarding retroactivity. Act 20-434 seeks to add definitions of "appraised value" and "bona fide offer of sale" which depart from how the Court of Appeals has construed those concepts/terms for over a decade. The amendment reads, in pertinent part, as follows:

> "(3) For the purposes of this subsection, in the case of multi-unit housing, the term:
>
> "(A)(i) "a bona fide offer of sale" means a sale price that is less than or equal to the appraised value of the property, multi-unit housing, and other appurtenant improvements ("property") plus, except as provided in sub-paragraph (ii) of this subparagraph, the amount of liens existing before the sale or transfer; provided, that the liens shall be satisfied by the seller in the sale or transfer transaction.
>
> \* \* \* \*
>
> "(B)(i) "Appraised Value" means an objective property valuation based on current state of the property and existing

>zoning, building, or occupancy permits that is no more than 6 months older than the date of the issuance of the offer of sale that has been determined by 2 independent appraisals performed by 2 appraisers qualified to perform multi-unit appraisals.
>
>"(ii) Of the 2 appraisers required by sub-paragraph (i) of this subparagraph, one shall be selected by the owner and one shall be selected by the tenant.  If the appraisers fail to agree upon a fair market value, the owner and the tenant shall jointly select and pay a third appraiser whose appraisal shall be binding or agree to take an average of the 2 appraisals."

13. This emergency act expired on January 5, 2015.  When it was introduced on September 23, 2014, it was accompanied by another piece of proposed legislation, this one being the "Tenant Opportunity to Purchase Temporary Amendment Act of 2014."  The provisions of the temporary act tracked (including "Beginning January 1, 2014,…") those of the emergency regulation.  The temporary act was passed by the City Council, signed by the Mayor on October 7, 2014 as Act 20-581, transmitted to Congress for review on January 13, 2015, and became law on February 26, 2015. The Temporary Act is effective for 225 days and expires, by law, on October 19, 2015.

14. In an attempt to close the gap between the expiration of the emergency amendment act and the temporary act, the City Council on December 16, 2014 introduced the "Tenant Opportunity to Purchase Congressional Review Emergency Amendment Act of 2014" (B20-1047, which ultimately became Act A20-0581).  This Congressional Review Emergency Amendment Act was signed by the Mayor and became effective on January 13, 2015 (made applicable back to January 5, 2015) and expires on April 12, 2015.

15. The legislative history of the emergency and temporary amendments is devoid of any evidence or findings of a wide-spread condition concerning bona fide offers of sale present in the District of Columbia or which needed to be addressed by emergency legislation.  Rather,

the legislation was exclusively driven by the events of Museum Square. Indeed, co-sponsor council member David Catania was blatant about the sole purpose of the legislation in public statements he posted on his constituent website.

16. Thus, through a series of legislative maneuvers, the City Council has specifically targeted Museum Square and injected itself seemingly retroactively to: halt Parcel One's plans to redevelop the Property; strip from the owner well recognized aspects of the value of property on which a housing accommodation sits; and effectuate a transfer of wealth (*i.e.*, the development value) from Parcel One to the Association.

## COUNT I

### (Declaratory Judgment and Injunction)

17. Parcel One hereby incorporates by reference the allegations or paragraphs 1 – 16, supra, as if fully stated herein.

18. An actual controversy of a justiciable nature exists between Parcel One and Defendant involving the constitutionality of the legislation.

19. By its conduct, Defendant has violated Parcel One's Constitutional rights to: due process, equal protection under the law, and freedom from bills of attainder. In addition, Defendant has subjected Parcel One to a private taking and a taking without just compensation.

20. Parcel One has no adequate remedy at law.

21. Unless Defendant is restrained by this Court from interfering with Parcel One's rights, Parcel One will suffer immediate, substantial and irreparable injury. Parcel One has a substantial likelihood of success on the merits of the underlying action. The benefits to Parcel One in obtaining injunctive relief outweigh the potential harm which Defendant would incur if

this Court grants the requested injunctive relief.  Moreover, the public interest is best served by granting the injunction.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff requests that this Honorable Court grant the following relief:

(a) a judicial declaration that the legislation is unconstitutional and is therefore void;

(b) a preliminary injunction and permanent injunction enjoining Defendant from seeking to enforce, in any manner, the legislation;

(c) an award of the costs of this action, including reasonable attorneys' fees;

(d) such other and further relief as the Court decides just and proper.

Respectfully submitted,

GREENSTEIN DELORME & LUCHS, P.C.

/S/Gwynne L. Booth

Dated:  March 13, 2015

Richard W. Luchs,  243931
Vincent Mark J. Policy,  204701
William C. Casano,  354492
Gwynne L. Booth, 996112
1620 L Street, N.W.
Suite 900
Washington, DC 20036-5605
Telephone: (202) 452-1400
Facsimile:  (202) 452-1410
Email:  glb@gdllaw.com
Counsel for Plaintiff Parcel One Phase One, L.L.P.