**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

|  |  |  |
|---|---|---|
| PARCEL ONE PHASE ONE ASSOCIATES, L.L.P., | ) ) | |
| **Plaintiff,** | ) ) | |
| v. | ) ) | **Civil Action No. 15-00369 (CRC)** |
| DISTRICT OF COLUMBIA, | ) ) | |
| **Defendant.** | ) ) | |
| _____ | ) | |

**DEFENDANT DISTRICT OF COLUMBIA'S**
**MOTION TO DISMISS THE COMPLAINT**
**PURSUANT TO FED. R. CIV. P. 12(b)(1) AND 12(b)(6)**

Defendant, the District of Columbia, hereby files this Motion to Dismiss the Complaint pursuant to Fed. R. Civ. P. 12(b)(1) and 12(b)(6).  Initially, the Court lacks jurisdiction over this case because Plaintiff lacks standing to challenge the recent legislation passed by the D.C. Council that temporarily amended the Tenant Opportunity to Purchase Act (TOPA).  The D.C. Superior Court has found that the offer of sale extended by Plaintiff to its tenants did not comport with the pre-amendment version of TOPA.  Further, the Superior Court found that the notice issued by Plaintiff to its tenants to vacate their homes, which was premised on Plaintiff's token attempt to comply with TOPA was, in fact, a nullity.  Therefore, the challenged amendments did not cause any injury to Plaintiff and any decision from this Court adjudicating the constitutional questions raised in the Complaint would be an impermissible advisory opinion.

Putting aside the issue of standing, Plaintiff's Complaint fails to state a claim upon which relief could be granted.  Although Plaintiff complains of a number of constitutional violations, including due process and equal protection claims, as well as claims that the challenged TOPA amendments constitute an unlawful taking and bills of attainder, none of the Complaint's

allegations are sufficient to overcome the presumption of legality attached to the Council's legislative acts.  None of the claims state a plausible claim for relief and all must be dismissed.

A Memorandum of Points and Authorities is attached to this Motion.  Because this Motion is a dispositive one, no duty to confer with opposing counsel is required pursuant to LCvR 7(m).

Respectfully submitted,

KARL A. RACINE
Attorney General for the District of Columbia

ELIZABETH SARAH GERE
Acting Deputy Attorney General
Public Interest Division

/s/ Toni M. Jackson
TONI M. JACKSON, D.C. Bar No. 453765
Chief, Equity Section

/s/ Chad Copeland
CHAD COPELAND, D.C. Bar No. 982119
Assistant Attorney General
441 Fourth Street, N.W.
Sixth Floor South
Washington, DC 20001
Telephone: (202) 724-6623
Facsimile: (202) 741-8880
Email: chad.copeland@dc.gov

/s/ Bradford C. Patrick
BRADFORD C. PATRICK, D.C. Bar No. 1004979
Assistant Attorney General
441 Fourth Street, N.W.
Sixth Floor South
Washington, DC 20001
Telephone: (202) 724-6627
Facsimile: (202) 741-0599
Email: bradford.patrick@dc.gov

**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| **PARCEL ONE PHASE ONE ASSOCIATES, L.L.P.,** )<br><br>)<br><br>) | |
| **Plaintiff,** ) | |
| ) | **Civil Action No. 15-00369 (CRC)** |
| **v.** ) | |
| ) | |
| **DISTRICT OF COLUMBIA,** ) | |
| ) | |
| **Defendant.** ) | |
| _____ ) | |

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
DEFENDANT DISTRICT OF COLUMBIA'S
MOTION TO DISMISS THE COMPLAINT
<u>PURSUANT TO FED. R. CIV. P. 12(b)(1) AND 12(b)(6)</u>**

Defendant District of Columbia respectfully submits this Memorandum of Points and Authorities in Support of its Motion to Dismiss.

## INTRODUCTION

With this lawsuit, Plaintiff seeks to undermine one of the District of Columbia's most important remedial statutes. Enacted in 1980, the Tenant's Opportunity to Purchase Act (TOPA) has served to protect lower income District tenants threatened by the perpetual shortage of affordable housing in the District. Indeed, by ensuring that tenants are afforded the opportunity to purchase the units in which they live before a property owner may sell or redevelop the property in question, scores of residents have been able to remain in their homes. Beginning in 2014, the Council of the District of Columbia (D.C. Council) undertook a series of legislative actions to ensure that the property values included in the offers of sale are not artificially and unreasonably inflated to effectively circumvent TOPA. Specifically, the TOPA amendments provide a concrete statutory definition of a "bona fide offer of sale" and make this definition

retroactive by providing that no property owner may issue a notice to vacate to its tenants on or after January 1, 2014, unless it has tendered a conforming bona fide offer.  In doing so, the Council has acted to ensure that TOPA continues to operate consistent with its remedial purposes.

Rather than simply comply with TOPA, Plaintiff has instead chosen to challenge its constitutionality.  The Complaint's hodgepodge of poorly pled constitutional claims, however, is fundamentally deficient in almost every way and should be dismissed for a multitude of reasons. *First*, given the fact that the Superior Court recently found that Plaintiff's purported "bona fide offer of sale" was not a reasonable estimate of the property's value irrespective of the recent TOPA legislation, Plaintiff appears to lack standing to even advance its claims.  *Second*, because it fails both to allege a sufficient property interest and to allege what process to which it was entitled, Plaintiff pleads no viable procedural due process claim.  *Third*, no substantive due process claim exists because the TOPA amendments are rationally related to strengthening the position of tenants and tenant associations in the TOPA compliance process.  *Fourth*, Plaintiff alleges no tenable equal protection claim as, again, a rational basis exists for the D.C. Council's legislative actions.  *Fifth*, it fails to plead facts sufficient to establish a takings claim under the Fifth Amendment, either as a private taking or as a regulatory taking.  *Finally*, Plaintiff cannot demonstrate a viable claim under the Constitution's prohibition on bills of attainder.

As more fully explained herein, nothing in Plaintiff's Complaint entitles it to pursue the bogus constitutional challenges it purports to allege.  The Complaint should be dismissed in its entirety.

## STATUTORY BACKGROUND

TOPA is part of the District of Columbia Rental Housing Conversion and Sale Act, D.C. Code §§ 42-3401.01 *et seq.*, a statute passed by the D.C. Council two and a half decades ago to address the District's "continuing housing crisis ... [and] severe shortage of rental housing available to citizens of the District of Columbia[.]"  D.C. Code § 42-3401.01(a)(1)-(2).  The statute's purposes include preserving rental housing that can be afforded by lower income tenants in the District, discouraging displacement of tenants from conversion or sales of rental properties, and strengthening the bargaining position of tenants.  *Id*; § 42-3401.02(a)(1)-(2).  The Council has amended the statute repeatedly over the years—both through emergency and permanent legislation—to further these purposes.  Ultimately, "TOPA is a remedial statute, and it is to be generously construed 'toward the end of strengthening the legal rights of tenants or tenant organizations to the maximum extent permitted under law.'"  *Richman Towers Tenants' Ass'n, Inc. v. Richman Towers LLC*, 17 A.3d 590, 601 (D.C. 2011) (quoting D.C. Code § 42-3405.11).

This litigation focuses on the provision of TOPA requiring that, prior to issuing a notice to vacate a property for purposes of demolition or sale, the owner of a housing accommodation[1] "shall give the tenant an opportunity to purchase the accommodation at a price and terms which represent a bona fide offer of sale."  D.C. Code § 42-3404.02(a).  "Bona fide offer of sale" was previously not defined by TOPA; however, in late 2014 and continuing into 2015, the D.C. Council undertook legislative steps to define the term.  (Compl. ¶¶ 11-14.)  Specifically, the Council passed three acts on an emergency and temporary basis (TOPA Amendments) that provide a temporary definition, all providing in relevant part that:

---

[1] "Housing accommodation" is defined as a "structure in the District of Columbia containing 1 or more rental units and the appurtenant land."  Plaintiff falls within this definition.  (Compl. ¶ 9.)

> A "bona fide offer of sale" means a sale price that is less than or equal to the appraised value of the real property…. "Appraised Value" means an objective property valuation based on current state of the property and exiting zoning, building, or occupancy permits that is no more than 6 months older than the date of the issuance of the offer of sale[.]"

(Tenant Opportunity to Purchase Emergency Amendment Act of 2014, D.C. Act 20-434, attached as Ex. A, Sec. 2; Tenant Opportunity to Purchase Temporary Amendment Act of 2014, D.C. Act 20-453, attached as Ex. B, Sec. 2; Tenant Opportunity to Purchase Congressional Review Emergency Amendment Act of 2014, D.C. Act 20-581, attached as Ex. C, Sec. 2.)[2] The legislation also makes this definition retroactive by providing that no property owner may issue a notice to vacate to its tenants on or after January 1, 2014 unless it has tendered a conforming bona fide offer. (*Id.*)

With this lawsuit, Plaintiff challenges the amendments' requirement that a bona fide offer of sale be valued based on its current appraised value—rather than the highest and best use of the property—and the retroactivity provision.

## FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff is the owner of the Museum Square Apartments located in the Mount Vernon Triangle area of the District. (Compl. ¶ 1.) Since its construction, the Museum Square Apartments have participated in the Section 8 Project-Based Rental Assistance program operated by the U.S. Department of Housing and Urban Development to provide rental subsidies for individuals with low incomes. (*Id.*) Museum Square has 302 of these low-income units, making it the fifth-largest of the 96 properties with Section 8 Project-Based contracts in the District of

---

[2] The last of these acts will expire on October 9, 2015. *See* Tenant Opportunity to Purchase Temporary Amendment Act of 2014, D.C. Act 20-453, Sec. 4(b); *see also* D.C. Law 20-166. The D.C. Council currently is considering legislation that would clarify the definition of a "bona fide offer of sale" on a permanent basis. (*See* TOPA Bona Fide Offer of Sale Clarification Amendment Act of 2015, D.C. Bill 21-0147, attached as Ex. E.)

Columbia. *Portfolio of Active Section 8 Contracts*, U.S. Dep't of Housing and Urban Development (Nov. 9, 2011).[3]

Plaintiff now intends to demolish the Museum Square building and redevelop the property to house approximately 350 condominiums, valued at approximately $350,000 per unit, and a minimum of 450 apartments, valued at $291,000 per unit.  (Compl. ¶ 8.)  In an attempt to comply with TOPA, on June 6, 2014, Plaintiff delivered an offer of sale to its tenants in the amount of $250 million.  (*Id.*)  This valuation was premised upon the property's future, intended use.  (*Id.*)

In response to the offer of sale, the tenants organized pursuant to D.C. Code § 42-3404.11.  (Order, *Museum Square Tenants Assoc., Inc. v. Parcel One Phase One Assoc., LLP*, No. 2014 CA 6869 R, April 22, 2015, attached as Ex. F, at 2.)   The tenants thereafter filed suit in the District of Columbia Superior Court seeking injunctive and declaratory relief, arguing that Plaintiff's $250 million offer of sale did not constitute a bona fide offer, either as defined by the TOPA amendments, or because the $250 million figure did not reflect an objectively fair analysis of the value of the property as required by the case law pre-dating the statutory definition.  (*Id.*)

The Superior Court agreed with the latter argument and granted the tenants' motion for summary judgment.  (*Id.* at 1.)  Although in opposition to the motion Plaintiff contended that the TOPA amendments violated its constitutional rights, the Superior Court determined that it did not need to reach the constitutional issues.  (*Id.* at 6 n.3.)  It found that Plaintiff's offer of sale did not meet the less demanding standard that existed prior to the passage of the TOPA amendments, generally described in *1618 Twenty-First Street Tenants Ass'n, Inc. v. The Phillips Collection*, 829 A.2d 201 (D.C. 2003), because the offer "was neither designed to, nor did, achieve a

---

[3] Available at http://portal.hud.gov/hudportal/documents/huddoc?id=DOC_35038.pdf.

reasonable estimate of the property's current market value." (*Id.* at 11.)  The Superior Court thereafter ordered Plaintiff to mail notices to each of its tenants, notifying them that a notice to vacate may not be enforced unless the Superior Court's decision is overturned by the D.C. Court of Appeals.  (Order and Final Judgment, *Museum Square Tenants Assoc., Inc. v. Parcel One Phase One Assoc., LLP*, No. 2014 CA 6869 R, May 13, 2015, attached as Ex. G, at 2.)

## STANDARD OF REVIEW

### A.  Rule 12(b)(6)

When ruling on Rule 12(b)(6) motions, courts may employ a "two-pronged approach." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009).  Although courts must assume the veracity of all "well-pleaded factual allegations" in the Complaint, *id.*, they need not accept as true "naked assertions devoid of further factual enhancement," *id.* at 678 (quoting *Bell Atlantic. Corp. v. Twombly*, 550 U.S. 544, 557 (2007)), "a legal conclusion couched as a factual allegation," *id.* at 678, or "inferences drawn by plaintiffs if such inferences are unsupported by the facts set out in the complaint," *Kowal v. MCI Comms. Corp., Inc.*, 16 F.3d 1271, 1276 (D.C. Cir. 1994).  A pleading must offer more than labels and conclusions or a formulaic recitation of the elements of a cause of action.  *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555).

Once a court has determined that there are well-pleaded factual allegations, it must then determine whether the allegations "plausibly give rise to an entitlement to relief" by presenting "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face,'" in that "the court [can] draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id.* at 678 (quoting *Twombly*, 550 U.S. at 570).  Simply alleging facts "consistent with a defendant's liability . . . stops short of the line between possibility and plausibility of entitlement to relief."  *Id.*; *see also Haynesworth v. Miller*, 820 F.2d 1245, 1254

(D.C. Cir. 1987).  "Insubstantial lawsuits can be quickly terminated by federal courts alert to the possibilities of artful pleading.  Unless the complaint states a compensable claim for relief under the Federal Constitution, it should not survive a motion to dismiss." *Butz v. Economou*, 438 U.S. 478, 507-508 (1978); *accord Harlow v. Fitzgerald*, 457 U.S. 800, 817-18 (1982).

In evaluating a Rule 12(b)(6) motion to dismiss, a court "'may consider only the facts alleged in the complaint, any documents either attached to or incorporated in the complaint and matters of which [a court] may take judicial notice.'" *Trudeau v. Federal Trade Comm'n,* 456 F.3d 178, 183 (D.C. Cir. 2006) (quoting *EEOC v. St. Francis Xavier Parochial Sch.*, 117 F.3d 621, 624-25 (D.C. Cir. 1997)).  This Court is empowered to take judicial notice of orders and factual findings made by other courts, including the D.C. Superior Court.  *See Remy Enterprise Group, LLC v. Davis*, 37 F. Supp. 3d 30, 33 n.4 (D.D.C. 2014).

**B.  Rule 12(b)(1)**

Despite the favorable inferences a plaintiff generally receives on a motion to dismiss, under Rule 12(b)(1), "it is to be presumed that a cause lies outside the federal courts' limited jurisdiction, unless the plaintiff establishes by a preponderance of the evidence that the Court possesses jurisdiction."  *Ramer v. United States*, 620 F. Supp. 2d 90, 95-96 (D.D.C. 2009) (internal citations and quotation marks omitted).  Moreover, "[w]hile the complaint is to be construed liberally, the Court need not accept factual inferences drawn by plaintiffs if those inferences are not supported by facts alleged in the complaint, nor must the Court accept plaintiffs' legal conclusions."  *See Speelman v. United States*, 461 F. Supp. 2d 71, 73 (D.D.C. 2006).  "Plaintiffs' factual allegations in the complaint . . . will bear closer scrutiny in resolving a 12(b)(1) motion than in resolving a 12(b)(6) motion for failure to state a claim."  *Wightman-*

*Cervantes v. Mueller*, 750 F. Supp. 2d 76, 78 (D.D.C. 2010) (internal quotation marks and citations omitted).

## ARGUMENT

With this lawsuit, Plaintiff asserts an unfocused, multi-pronged challenge to the TOPA amendments.  The Complaint avers that the TOPA amendments at issue—codifying a definition of "bona fide offer of sale" and making the definition retroactive—violate no fewer than five constitutional provisions: procedural due process, substantive due process, equal protection under the law, the takings clause, and the prohibition on bills of attainder.  In swinging for the fences, however, Plaintiff has missed the mark entirely.  As explained herein, the Complaint alleges no viable cause of action under *any* of the claims asserted therein.

## I.   PLAINTIFF LACKS STANDING BECAUSE IT SUFFERED NO INJURY FROM THE CHALLENGED LEGISLATION THAT IS REDRESSABLE THROUGH A FAVORABLE DECISION

"Without standing, there is no subject matter jurisdiction."  *Prosser v. Fed. Agric. Mortgage Corp.*, 593 F. Supp. 2d 150, 155 (D.D.C. 2009).  "Standing represents a jurisdictional requirement that remains open to review at all stages of the litigation."  *Nat'l Org. for Women Inc., v. Scheidler*, 510 U.S. 249, 255 (1994).  "[T]he court has an independent obligation to assure that standing exists."  *Summers v. Earth Island Inst.*, 555 U.S. 488, 499 (2009) (citing *Bender v. Williamsport Area Sch. Dist.*, 475 U.S. 534, 541 (1986)).  Plaintiff, as the party invoking the Court's jurisdiction, carries the burden to establish standing.  *Id*. at 493 (citation omitted).

The standing doctrine encompasses "both constitutional limitations on federal-court jurisdiction and prudential limitations on its exercise."  *Warth v. Seldin*, 422 U.S. 490, 498 (U.S. 1975).  To establish the "irreducible constitutional minimum of standing," a plaintiff must allege

the following:  (1) an "injury in fact" which is "(a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical"; (2) "a causal connection between the injury and the conduct complained of"; and (3) a likelihood "that the injury will be redressed by a favorable decision."  *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992) (internal quotation marks and citations omitted).  A "particularized" injury is defined as one that "affect[s] the plaintiff in a personal and individual way."  *Id.* at 561 n.1.  As a result, Article III of the United States Constitution "requires the party who invokes the court's authority to 'show that *he personally* has suffered some actual or threatened injury as a result of the putatively illegal conduct of the defendant.' "  *Valley Forge Christian College v. Americans United for Separation of Church and State*, 454 U.S. 464, 472 (1982) (quoting *Gladstone, Realtors v. Village of Bellwood,* 441 U.S. 91, 99 (1979)) (emphasis added).

Plaintiff cannot meet this standard because it lacks an injury in fact caused by the TOPA amendments that is redressable by a favorable decision.  The Complaint seems to suggest that Plaintiff has been injured in that it tendered an offer of sale on June 6, 2014 that conflicts with the TOPA amendments, and that this offer will not be sufficient to satisfy Plaintiff's obligations under TOPA unless this Court rules that the recent amendments are unconstitutional as applied to Plaintiff.  But Plaintiff may not rely upon its offer of sale in asserting an injury in fact.  Indeed, the D.C. Superior Court has found that Plaintiff's offer of sale did not meet the TOPA's bona fide offer mandate as it existed prior to the TOPA amendments' enactment because it did not reflect a reasonable assessment of the current value of the property.  (*See* Order, *Museum Square Tenants Assoc., Inc. v. Parcel One Phase One Assoc., LLP*, No. 2014 CA 6869 R, April 22, 2015, at 11.)  In other words, the TOPA amendments had no effect on the legality of the offer of sale tendered by Plaintiff; it is a nullity.  It would not have been a bona fide offer regardless of

whether the Council passed the recent legislation that forms the basis of Plaintiff's Complaint. Consequently, the TOPA amendments caused no "concrete and particularized" injury to Plaintiff, nor are there allegations in the Complaint sufficient to infer that the TOPA amendments will imminently cause injury to Plaintiff in the immediate future. *See Lujan*, 504 U.S. at 560-61.

Moreover, a favorable decision from this Court would not redress an actual injury to Plaintiff. Because the Superior Court determined that Plaintiff's offer of sale did not comply with the pre-amendment TOPA statute, a ruling that those amendments are unconstitutional would not transform the June 6, 2014 offer of sale into a bona fide offer. Regardless of this Court's ruling, the offer of sale will continue to be invalid under District law.

No doubt Plaintiff disagrees with the holding of the Superior Court and will ask the D.C. Court of Appeals to reverse it. But unless and until that occurs, any ruling from this Court would be a mere advisory opinion that would not mandate any change in the relationship between the parties. *See Chamber of Commerce v. EPA*, 642 F.3d 192, 199 (D.C. Cir. 2011) ("[F]ederal courts are without authority to render advisory opinions or to decide questions that cannot affect the rights of litigants in the case before them.") (citations and quotation marks omitted). Deciding the merits of this case conflicts with the well-settled principles of constitutional avoidance. *See Hastings v. Judicial Conference of the United States*, 770 F.2d 1093, 1100 (D.C. Cir. 1985) (federal courts will not decide the constitutionality of legislation unless necessary and will not do so in broader terms than required by the facts of the case). And, of course, Plaintiff may not base standing on speculative future acts of the D.C. Court of Appeals. *See Peterson v. Transp. Workers Union of Am.*, --- F. Supp. 3d ---, No. 13 Civ. 170 (CRC), 2014 WL 6755666, at *3 (D.D.C. Dec. 1, 2014) (Cooper, J.) ("an alleged injury cannot support standing if it is based primarily on conjecture about future actions and responses").

If Plaintiff achieves victory in this case, the offer of sale it made to its tenants will remain void because the recent TOPA amendments have not caused Plaintiff any injury.  The Complaint alleges no other conceivable basis upon which to establish an injury in fact.  Plaintiff thus lacks standing, and the Court should dismiss the Complaint.

II.   **PLAINTIFF'S PROCEDURAL DUE PROCESS CLAIM FAILS BECAUSE IT HAS ALLEGED NO PROTECTED PROPERTY INTEREST AND IT HAS IDENTIFIED NO PROCESS DUE TO IT**

A. **The Anticipated Application of an Existing Law Does Not Constitute a Cognizable Property Interest**

As with many of Plaintiff's asserted constitutional claims, the allegations in the Complaint concerning a constitutional deprivation of procedural due process are sparse.  Faltering out of the gate, the Complaint fails to identify the nature of the asserted property interest of which it was allegedly deprived by the recent TOPA legislation.  The Constitution itself does not confer property interests protected by the Fifth Amendment's due process clause; only interests granted by state or local laws are afforded constitutional protection.  *Bd. of Regents v. Roth*, 408 U.S. 564, 577 (1972); *see also Ki Young Chung v. District of Columbia*, 982 F. Supp. 20, 22 (D.D.C. 1997) ("Thus, plaintiffs must predicate their claim to a constitutional property interest not on the metaphysics of the Fifth Amendment but on the concrete provisions of the D.C. Code.").  To possess a cognizable property interest, "a person clearly must have more than an abstract need or desire for it.  He must have more than a unilateral expectation of it.  He must, instead, have a legitimate claim of entitlement to it." *Roth*, 408 U.S. at 576.

The recent legislation did not deprive Plaintiff of a cognizable property interest over which it could claim a legitimate entitlement.  Plaintiff retains ownership of the property and has wide discretion to use the property within the confines of the law.  Plaintiff has known for decades that if it wished to sell, demolish, or cease using the property for housing it is required to

make a bona fide offer of sale to its tenants in accordance with TOPA before doing so.  The emergency legislation passed by the Council only clarified what offers are bona fide.

The only conceivable interest arguably affected by the recent TOPA amendments is Parcel One's expectation that any offer of sale it might make would be judged without reference to a statutory definition of the term "bona fide."  But that interest—if it can be called one at all— is too nebulous to be classified as a legitimate entitlement in light of the District's authority to regulate land use within its borders.  *See Lucas v. South Carolina Coastal Council*, 505 U.S. 1003, 1027 (1992) ("[A] property owner necessarily expects the uses of his property to be restricted, from time to time, by various measures newly enacted by the State in legitimate exercise of its police powers.").  Under District of Columbia law, "[a] vested right must be more than a mere expectation based on the anticipated application of existing law." *Scholtz P'ship v. District of Columbia Rental Accommodations Comm'n*, 427 A.2d 905, 918 (D.C. 1981).  For this reason, zoning regulations that limit potential future uses of property, for example, do not impinge upon vested property interests.  *See Speyer v. Berry*, 588 A.2d 1147, 1154 (D.C. 1991) ("[T]he mere purchase of land does not create a right to rely on existing zoning.") (quoting *Vienna Council v. Kohler*, 244 S.E.2d 542, 548 (Va. 1978)); *see also Aquino v. Tobriner*, 298 F.2d 674, 677 (D.C. Cir. 1961); *Watergate East Comm. Against Hotel Conversion to Co-Op Apartments v. District of Columbia Zoning Comm'n*, 953 A.2d 1036, 1047 (D.C. 2008) (noting that "there are no vested rights in the continuation of a zoning classification").

As mentioned, the TOPA amendments do not go so far as to actually inhibit prospective uses of a property; they merely impose a pre-condition on prospective uses by defining what constitutes bona fide offer of sale to the tenants.  Thus, as vested property rights are not disturbed

by all-out prohibitions on the future use of a property, surely the legislative definition in the

TOPA amendments does not encroach upon Plaintiff's vested property interests.

### B. Plaintiff Has Not Identified Any Process Due To It and in Any Event May Not Base a Procedural Due Process Claim on Duly-Enacted Acts of a Legislative Body

The lack of an identifiable, vested property interest deprived by the legislation

notwithstanding, Plaintiff's procedural due process claim must fail for the independent reason

that the Complaint does not allege the nature of the process that allegedly was due to it.  *See*

*Elkins v. District of Columbia*, 690 F.3d 554, 561 (D.C. Cir. 2012) ("To state a procedural due

process claim, a complaint must suggest 'what sort of process is due.'") (quoting *Doe by Fein v.*

*District of Columbia*, 93 F.3d 861, 869 (D.C. Cir. 1996)); *Koch v. White*, 967 F. Supp. 2d 326,

334-55 (D.D.C. 2013) (dismissing procedural due process claim where the complaint did not

allege the procedures to which the plaintiff was entitled).  Plaintiff's perfunctory claim that it

was denied procedural due process, without any description of what procedures were necessary,

does not meet Plaintiff's pleading obligations and mandates dismissal.  *Elkins*, 690 F.3d at 561;

*Koch v. White*, 967 F. Supp. 2d at 334-35.

But even if this pleading failure could be overlooked—which it cannot and should not—

Plaintiff's procedural due process claim is doomed because it challenges a legislative enactment.

"[T]he Supreme Court has made clear that the legislative process provides all the *process* that is

constitutionally due" when the legislature passes a law.  *American Bus Ass'n v. Rogoff*, 649 F.3d

734, 743 (D.C. Cir. 2011) (emphasis in original) (citing *Atkins v. Parker*, 472 U.S. 115, 128-30

(1985); *Bi-Metallic Inv. Co. v State Bd. of Equalization*, 239 U.S. 441, 445-46 (1915); and

*Decatur Liquors, Inc. v. District of Columbia*, 478 F.3d 360, 363 (D.C. Cir. 2007)); *see also*

*Logan v. Zimmerman Brush Co.*, 455 U.S. 422, 433 (1982) ("the legislative determination

provides all the process that is due"); *Interport Pilots Agency, Inc. v. Sammis*, 14 F.3d 133, 142 (2d Cir. 1994) ("Official action that is legislative in nature is not subject to the notice and hearing requirements of the due process clause."); *Chicago Bd. of Realtors, Inc. v. City of Chicago*, 819 F.2d 732, 738-39 (7th Cir. 1987) ("The procedure the landlords were due in this respect was accorded them—in the legislature."). Plaintiff does not and cannot allege that the TOPA amendments were passed outside the normal legislative process. Accordingly, Plaintiff could not state a claim for violation of its procedural due process rights even were its Complaint adequately pleaded.

## III.    PLAINTIFF CANNOT DEMONSTRATE THAT THE CHALLENGED LEGISLATION LACKS A RATIONAL BASIS AND THEREFORE THE SUBSTANTIVE DUE PROCESS CLAIM MUST BE DISMISSED

Any plaintiff challenging legislation on substantive due process grounds faces a high bar. "Unless legislation infringes a fundamental right, judicial scrutiny under the substantive due process doctrine is highly deferential." *Empresa Cubana Exportadora de Alimentos y Productos Varios v. United States Dep't of Treasury*, 638 F.3d 794, 800 (D.C. Cir. 2011) (citing *Washington v. Glucksburg*, 521 U.S. 702, 720-22 (1997)). The Complaint does not identify any right that could be said to be fundamental. *Cf. Washington v. Glucksberg*, 521 U.S. at 720 (rights recognized as fundamental include the right to marry, to have and direct the upbringing of children, to marital privacy, to bodily integrity, to contraception and abortion). Thus, the challenged legislation is entitled to a presumption of constitutionality "that can be overcome only if the challenger establishes that the legislature acted in an arbitrary and irrational way." *Assoc. of Bituminous Contractors, Inc. v. Apfel*, 156 F.3d 1246, 1255 (D.C. Cir. 1998). In other words, the TOPA amendments must be upheld "if there is any conceivable rational basis supporting it." *Id.*

**A.  The TOPA Amendments Have a Rational Basis**

Here, the basis for the temporary legislation is clear.  The Council has always been of the belief that TOPA should be interpreted "toward the end of strengthening the legal rights of tenants or tenant organizations to the maximum extent permissible under law."  D.C. Code § 42-3405.11.  But prior to the passage of the TOPA amendments, TOPA did not provide an explicit definition of a bona fide offer in the context of a demolition.  *See 1618 Twenty-First Street Tenants Ass'n, Inc. v. The Phillips Collection*, 829 A.2d 201, 205 (D.C. 2003).  This ambiguity created the potential for abuse by property owners who may make unreasonably high offers inconsistent with TOPA's overarching purposes.[4]  And that is precisely what happened here.

The offer of sale extended by Plaintiff, which the Council described as being "more than 7 times the assessed value" of the property, did not comport with TOPA's purpose of keeping District residents with lower incomes in their homes to the extent possible.  *See* Tenant Opportunity to Purchase Emergency Declaration Resolution of 2014, D.C. Res. 20-609, attached as Ex. D.  Recognizing that Plaintiff sought to exploit a potential ambiguity in the TOPA statute that was at odds with TOPA's core purpose of preserving affordable housing, *see* D.C. Code § 42-3401.02(a)(2), the Council determined that an explicit statutory definition was necessary.

That the Council may have been prompted to act in response to public opposition to Plaintiff's actions does not undermine the rational basis for the legislation.  (*See* Aaron Weiner, "Bull in Chinatown: Developer Tells Section 8 Tenants to Pay Up or Get Out, *Washington City Paper*, Jul. 9, 2014, *available at* http://www.washingtoncitypaper.com/blogs/housingcomplex/2014/07/09/bull-in-chinatown-developer-tells-section-8-tenants-to-pay-up-or-get-out (last visited May 8, 2015), attached as Ex. H ("[Plaintiff's offer of sale] wasn't a ransom note or a mob

---

[4] The purposes of TOPA are outlined *supra*, at 2-4.

warning, but to the tenants in the Mount Vernon triangle residence, it might as well have been.").)   As the D.C. Circuit has held, "there is nothing unusual or untoward in local government officials' responsiveness to public opinion." *3883 Connecticut LLC v. District of Columbia*, 336 F.3d 1068, 1075 (D.C. Cir. 2003) (finding rational basis to support District's issuance of stop work order to commercial developer, notwithstanding developer's claim that it had been targeted in response to local opposition).

In addition, Plaintiff's attempt to redevelop its property while displacing its tenants comes at a time when the District is facing a monumental challenge to curb homelessness.  An ongoing effort by District officials to locate homes for 500 homeless families already is threatened by the severe shortage of affordable housing.  (*See* Tenant Opportunity to Purchase Emergency Declaration Resolution of 2014, D.C. Res. 20-609.)  Were the tenants of Plaintiff's 302 units forced to move from their homes without receiving a fair and reasonable offer to purchase the property, or the potential to assign that right to a buyer who would commit to keeping rent affordable, it inevitably would frustrate the District's efforts, resulting in an increase in the number of homeless families and a decrease in the stock of affordable housing.

Moreover, the recent legislation is not limited solely to the dispute between Plaintiff and its tenants.  The TOPA amendments are laws of general applicability that reflect the Council's concern that a definition of a bona fide offer of sale is necessary to prevent other property owners from following in Plaintiff's footsteps by similarly exploiting the ambiguity that existed in the statute.  Thus, TOPA was amended to provide concrete guidance to parties and courts to determine the value of a bona fide offer where there is no proposed third-party contract to purchase the property.  The Council's actions therefore are rationally related to the District's

interest in upholding the rights of low-income tenants and preserving the limited stock of affordable rental units remaining within its borders.

### B. The Retroactive Clause Does Not Violate Plaintiff's Substantive Due Process Rights

That the challenged legislation by its terms applies retroactively to January 1, 2014, does not alter this conclusion.  For one, retroactivity of the new definition had no effect on Plaintiff: the D.C. Superior Court found that Plaintiff's offer of sale was incongruous with case law interpreting the meaning of a bona fide offer prior to the passage of the TOPA amendments. (*See* Order, *Museum Square Tenants Assoc., Inc. v. Parcel One Phase One Assoc., LLP*, No. 2014 CA 6869 R, April 22, 2015.)  In other words, the offer made by Plaintiff did not satisfy TOPA irrespective of the passage of the recent legislation.  The offer described in paragraph nine of the Complaint is a nullity, and Plaintiff therefore lacks standing to challenge this aspect of the TOPA amendments.  (*See* Part I.)

Second, even had Plaintiff's offer of sale satisfied the pre-amendment case law interpreting bona fide offers in this context, the statute did not act retroactively as to Plaintiff because Plaintiff did not issue a notice to vacate to its tenants prior to the TOPA amendments' passage.  (Order and Final Judgment, *Museum Square Tenants Assoc., Inc. v. Parcel One Phase One Assoc., LLP*, No. 2014 CA 6869 R, May 13, 2015, attached as Ex. G, at 2 (noting that Plaintiff issued notices to vacate on or about March 13, 2015).)  Plaintiff seeks to cast the legislation as regulating retroactively the offer of sale it made on June 6, 2014.  But what is regulated by the amendments—at least in terms of the retroactivity clause—is *not* the offer of sale, it is the requirements to issue *a notice to vacate*.

The TOPA amendments, all of which are identical for in this respect, read:

> Beginning January 1, 2014, before an owner of a housing accommodation may . . . issue a . . . notice to vacate for purposes of demolition or discontinuance of housing use, the owner shall give the tenant an opportunity to purchase the accommodation at a price and terms which represent a bona fide offer of sale."

(Tenant Opportunity to Purchase Emergency Amendment Act of 2014, D.C. Act 20-434, Sec. 2; Tenant Opportunity to Purchase Temporary Amendment Act of 2014, D.C. Act 20-453, Sec. 2; Tenant Opportunity to Purchase Congressional Review Emergency Amendment Act of 2014, D.C. Act 20-581, Sec. 2.)  The amendments thus impose requirements for all *notices to vacate* issued on or after January 1, 2014 for purposes of demolition or discontinuance of housing—not merely offers of sale issued on or after that date.

In modern usage, statutes raise retroactivity concerns only where they take away vested rights or where they impose new obligations upon a transaction that have already been completed.  *Fernandez-Vargas v. Gonzales*, 548 U.S. 30, 37 (2006) (citation omitted).  As shown in Part II.A., Plaintiff had no vested interest in the anticipated application of TOPA's offer of sale requirements as they existed at the date Plaintiff tendered its offer, and the Complaint alleges no transaction that has been upset by the new definition.  Indeed, at the time the Tenant Opportunity to Purchase Emergency Amendment Act of 2014 was passed on October 7, 2014, Plaintiff had extended an offer of sale to its tenants but had not issued a notice to vacate relying upon the tenants' refusal of that notice.  (Order and Final Judgment, *Museum Square Tenants Assoc., Inc. v. Parcel One Phase One Assoc., LLP*, No. 2014 CA 6869 R, May 13, 2015, at 2.)  Because the amendments' temporal focus is on the date a notice to vacate is issued rather than the date an offer of sale is tendered, the amendments do not operate retroactively as to Plaintiff.

Third, due process would be satisfied even if the amendments could be deemed to regulate Plaintiff's conduct retroactively.  As with any legislation, acts with retroactive effect are afforded a strong presumption of constitutionality.  *See Pension Benefit Guar. Corp. v. R.A. Gray*

*& Co.*, 467 U.S. 717, 729 (1984) ("[T]he strong deference accorded legislation in the field of national economic policy is no less applicable when that legislation is applied retroactively."); *Assoc. of Bituminous Contractors, Inc. v. Apfel*, 156 F.3d at 1255.  The Supreme Court has recognized that "the constitutional impediments to retroactive civil legislation are now modest." *Landgraf v. USI Film Products*, 511 U.S. 244, 272 (1994); *see also Usery v. Turner Elkhorn Mining Co.*, 428 U.S. 1, 16 (1978) ("[L]egislation readjusting rights and burdens is not unlawful solely because it upsets otherwise settled expectations.").  Retroactive legislation will be upheld so long as the retroactive application of the statute has a rational basis.  *Assoc. of Bituminous Contractors, Inc. v. Apfel*, 156 F.3d at 1255 (quoting *Pension Benefit Guar. Corp.*, 467 U.S. at 729-30)).

Here, the Council ensured that the recent legislation would apply retroactively to further its overall purpose of preserving the limited stock of affordable rental housing in a time where efforts to alleviate homelessness is a high priority for the District and its citizens.[5]  In passing the recent TOPA legislation, the Council found that Plaintiff's property included 302 subsidized housing units that were at risk of being eliminated.  (Tenant Opportunity to Purchase Emergency Declaration Resolution of 2014, D.C. Res. 20-609, Sec. 2.)  The Council further noted that the potential loss of these affordable rental units would place further strain on the District's ongoing effort to locate housing for 500 homeless families.  (*Id.*)  Thus, the Council recognized the importance of providing the tenants of these more than 300 units a "fair and genuine" opportunity to purchase the building for its appraised value (*id.*), which rationally furthered the Council's objective to maintain affordable housing in the District.

---

[5] As noted above, it is arguable whether the Council needed to state affirmatively that the amendments were to be applied "[b]eginning January 1, 2014" in order for the Plaintiff's offer of sale to fall within its reach.  Nevertheless, doing so conclusively establishes that Plaintiff may not issue a notice to vacate to its tenants until it makes a bona fide offer of sale that conforms to the TOPA amendments.

Finally, the Council acted within its authority to the extent that it provided a statutory definition for a "bona fide offer" that was more exacting than how the D.C. Court of Appeals defined the term in *Phillips*. 829 A.2d at 205-07. Courts have long recognized the legislature's ability to clarify its own statutes retroactively where the legislature disagrees with the interpretations given by the judiciary. *See Capello v. District of Columbia Bd. of Educ.*, 669 F. Supp. 14, 18 (D.D.C. 1987) (finding that an "assertion that the doctrine of separation of powers prohibits Congress from clarifying the meaning of its own legislation turns the doctrine on its head"). The D.C. Council's desire to define TOPA's bona fide offer provision "as the law [was] intended," and doing so retroactively to ensure that Plaintiff's tenants received a reasonable offer of sale before being forced from their homes, was a rational means of advancing TOPA's overall objectives.

Plaintiff's substantive due process clause must be dismissed because the challenged legislation was supported by a rational basis.

## IV. PLAINTIFF'S EQUAL PROTECTION CLAIM MUST BE DISMISSED BECAUSE PLAINTIFF CANNOT DEMONSTRATE THAT THE CHALLENGED LEGISLATION LACKS A RATIONAL BASIS

Plaintiff's equal protection claim fares no better. No basis—factual or legal—is offered in support of the claim. Rather, equal protection is mentioned precisely once and only in passing among a laundry list of legal theories under which Plaintiff wishes to proceed. (Compl. ¶ 19 ("By its conduct, Defendant has violated Parcel One's Constitutional rights to: due process, equal protection under the law, and freedom from bills of attainder.").) This type of pleading fits comfortably among those the Supreme Court has forbidden in *Iqbal* and *Twombly*. *Iqbal*, 556 U.S. at 678; *Twombly*, 550 U.S. at 555. Plaintiff pleads no facts from which the Court can infer that Plaintiff has a plausible equal protection claim.

Indeed, it is not clear whether Plaintiff contends that the recent TOPA legislation violates equal protection because of a suspect classification or if the claim is premised on a so-called "class of one." *Cf. Kelley v. District of Columbia*, 893 F. Supp. 2d 115, 122 (D.D.C. 2012) (distinguishing class-of-one equal protection claims from those premised on a suspect classification). But Plaintiff's assertion that "the City Council has specifically targeted Museum Square" combined with the total absence of any allegation regarding Plaintiff's membership in a suspect class leads the District to assume that the equal protection claim is of the class-of-one variety. *Cf. Tate v. District of Columbia*, 627 F.3d 904, 910 (D.C. Cir. 2010) (concluding that a date-based classification based upon the effective date of a statute "'neither involv[es] fundamental rights nor proceed[s] along suspect lines'") (quoting *Steffan v. Perry*, 41 F.3d 677, 684 (D.C. Cir. 1994) (*en banc*)).

A class of one equal protection claim has two straightforward elements: "(1) disparate treatment of similarly situated parties (2) on no rational basis." *3883 Connecticut LLC v. District of Columbia*, 336 F.3d at 1075 (citing *Village of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000)). Plaintiff meets neither element. First, the Complaint does not identify the existence of a similarly-situated property owner that was treated differently than Plaintiff. "[C]lass-of-one plaintiffs must show an extremely high degree of similarity between themselves and the persons to whom they compare themselves." *Clubside, Inc. v. Valentin*, 468 F.3d 144, 159 (2d Cir. 2006) (explaining that the necessary degree of similarity is higher than in the employment discrimination context). The wholesale failure to allege that similarly-situated owners have been treated differently demands dismissal of the claim as a matter of pleading. *See Quezada v. Marshall*, 915 F. Supp. 2d 129, 135 (D.D.C. 2013) (granting motion to dismiss where the complaint did not allege existence of similarly-situated individual who had been treated

differently) (citations omitted); *see also Tate v. District of Columbia*, 627 F.3d at 910 (affirming summary judgment decision where no similarly-situated individual was identified).

Second, Plaintiff cannot demonstrate that the Council lacked a rational basis for passing the legislation at issue. "[R]ational-basis review in equal protection analysis 'is not a license for courts to judge the wisdom, fairness, or logic of legislative choices.'" *Heller v. Doe*, 509 U.S. 312, 319 (1993) (quoting *FCC v. Beach Comm., Inc.*, 508 U.S. 307, 313 (1993)). Instead, to succeed, Plaintiff has the burden to "negate every conceivable basis" that could support the Council's actions. *Tate v. District of Columbia*, 627 F.3d at 910. As the District has shown in Part III, Plaintiff cannot demonstrate that the challenged legislation lacks a rational basis.

## V.   THE TOPA AMENDMENTS DO NOT EFFECT A TAKING IN CONTRAVENTION OF THE FIFTH AMENDMENT

Plaintiff alleges that it has been subject to "a private taking and a taking without just compensation" in violation of the Fifth Amendment to the Constitution. (Complaint at ¶ 19.) As explained herein, Plaintiff has failed to plead facts establishing a cause of action under either theory. First, no private taking occurs from the challenged TOPA amendments because (1) no taking has occurred, and (2) even if one had been alleged, an unmistakable public benefit exists from preserving affordable housing for lower income District residents. Second, Plaintiff has failed to plead a regulatory taking, as the allegations in the Complaint fail to satisfy the regulatory taking test set out in *Penn Central Transp. Co. v. City of New York*, 438 U.S. 104, 124 (1978) (citation omitted). Both are discussed below.

### A.  Private Taking

The District does not dispute the principle that it, like any state actor, is prohibited from taking a property owner's land for the purposes of conferring a private benefit on a particular private party, *see Haw. Hous. Auth. v. Midkiff*, 467 U.S. 229, 245 (1984); however, no aspect of

the facts of this case bear the remotest resemblance to a private taking.  Indeed, because Plaintiff failed to plead either that a taking actually occurred and because a legitimate public benefit exists from preserving affordable housing for lower income District residents, Plaintiff possesses no viable claim for a private taking.

First, there are no allegations in the Complaint sufficient to state a claim that *any* taking occurred, much less a private one.  Plaintiff does not, and cannot, argue that a physical invasion of Parcel One's property occurred or that the District has pursued eminent domain over the subject property.  (Compl. ¶ 16.)  Likewise, no allegations exist that the District acquired any property interest of Plaintiff's and transferred it to a third party.  (*Id.*)  Without allegations sufficient to establish this predicate, the alleged use of the property is irrelevant.

Even if Plaintiff could establish that some sort of taking occurred, it has not alleged facts sufficient to establish a claim of private use.  The Fifth Amendment states that "nor shall private property be taken for public use, without just compensation."  U.S. CONST. AMEND. V.  The District recognizes that it "would no doubt be forbidden from taking [Plaintiff's] land for the purpose of conferring a private benefit on a particular private party" or when the property is taken "under the mere pretext of a public purpose, when its actual purpose was to bestow a private benefit." *Kelo v. New London*, 545 U.S. 469, 477–78 (2005).  For purposes of the Court's analysis, however, the Supreme Court "has declared that a taking should be upheld as consistent with the Public Use Clause as long as it is 'rationally related to a conceivable public purpose.' This deferential standard of review echoes the rational-basis test used to review economic regulation under the Due Process and Equal Protection Clauses."  *Id.* at 490 (Kennedy, J., concurring) (citations omitted) (quoting *Midkiff*, 467 U.S. at 241).  Here, that test is easily met.

The challenged amendments, and TOPA more generally, serve the legitimate public purpose of preserving the existence of lower income rental housing in the District of Columbia. (*See* Compl. ¶ 11 (acknowledging that the purpose of the Council's action has been to ensure that under TOPA, "to be a bona fide offer [of sale] as the law intended, … [the] owner's offered sale price must be fair and genuine[,] … the imminent loss of these 302 subsidized housing units, and … the effort to house 500 currently homeless families [in the District of Columbia] falling short") (citing Tenant Opportunity to Purchase Emergency Declaration Resolution of 2014, D.C. Res. 20-609); D.C. Code § 53-3401.01(a)(1)-(2) (stating that the purpose of TOPA is to address the continuing housing crisis in the District of Columbia and the severe shortage of rental housing available to lower income tenants); *see also* D.C. Code § 42-3401.02(2), (6) (establishing the purpose of the statute is "to strengthen the bargaining power of tenants" and "to encourage the formation of tenant organizations").)  Ensuring that lower income renters in the District have an *opportunity* to purchase their housing at the current appraised value of the property, rather than at the property's highest and best use, is rationally related to the public purposes for which the statute was enacted.

That Plaintiff disagrees with the policy underlying the TOPA amendments is of no matter.  "When the legislature's purpose is legitimate and its means are not irrational, our cases make clear that empirical debates over the wisdom of takings—no less than debates over the wisdom of other kinds of socioeconomic legislation—are not to be carried out in the federal courts."  *Kelo*, 545 U.S. at 488 (citation omitted).  As such, Plaintiff's claim that the TOPA amendments constitute a private taking must be dismissed.

## B.      Regulatory Taking

"[W]hether a particular restriction will be rendered invalid by the government's failure to pay for any losses proximately caused by it depends largely upon the particular circumstances [in that] case." *Penn Cent. Transp. Co. v. City of New York*, 438 U.S. at 124 (citation omitted). When analyzing whether a particular regulation constitutes a regulatory taking, a court generally considers the following: "[t]he economic impact of the regulation on the claimant," including "the extent to which the regulation has interfered with distinct investment-backed expectations," and the "character of the governmental action," for example, whether the state action can be characterized as a physical invasion of the property at issue.[6] *Id.* at 124.    Applying the *Penn Central* test to the Complaint here, the Plaintiff has failed to state a regulatory takings claim as a matter of law.

### 1.  The Complaint Fails to Allege an Economic Impact Sufficient to Constitute a Taking

The Fifth Amendment places an extremely heavy burden on a regulatory takings claimant regarding the economic impact on a regulation to his or her property.   The Supreme Court has repeatedly made clear that where a property's use remains "economically viable" and where a "beneficial use" of the property remains otherwise available, there is no "taking" merely because the owner's expectations of profits are not satisfied.  *Penn Central*, 438 U.S. at 138.  "[M]ere diminution in the value of property, however serious, is insufficient to demonstrate a taking." *Concrete Pipe & Prods. v. Constr. Laborers Pension Trust*, 508 U.S. 602, 645 (1993) (finding that a loss of 46% of shareholder equity was not a taking); *see also Penn Central*, 438 U.S. at 131 (discussing cases where 75% reduction and 87.5% reduction in value did not constitute a

---

[6] While the Supreme Court has held that certain discrete categories of regulatory actions are compensable "without case-specific inquiry into the public interest advanced in support of the restraint," for example, "[w]here regulation denies all economically beneficial or productive use of land," *Lucas*, 505 U.S. at 1015, Plaintiff has not alleged anything that would somehow constitute a *per se* taking.

taking).   Accordingly, to survive a Motion to Dismiss, Plaintiff's Complaint must have alleged with sufficient specificity an economic impact on its property that renders it economically non-viable and without beneficial use because of the TOPA amendments.   It has not done so.

In generic fashion, the Complaint simply alleges that the challenged legislation "strip[s] from the owner well recognized aspects of the value of property on which a housing accommodation sits; and effectuate[s] a transfer of wealth (*i.e.*, the development value) from Parcel One to the Association."   (Compl. ¶ 16.)   Absent from the Complaint, however, are any factual allegations describing how the value of Plaintiff's property has, in fact, changed.   While Plaintiff has alleged speculative conclusions that the effect of the TOPA amendments "give[] the tenants the power to drive down the price of a housing accommodation" (Compl. ¶ 12), no factual allegations exist to establish that such an event has occurred, or will occur, regarding the Museum Square property.   The reference to the proposed purchase price of Museum Square being more than seven times the assessed value of the property in Paragraph 11 is irrelevant to the Court's analysis on this point because, as noted *supra*, the $250 million "valuation" of the Museum Square property has already been rejected as a bona fide offer of sale by the D.C. Superior Court, a court of competent jurisdiction.   (*See* Ex. F.)

Moreover, Plaintiff makes no allegations that it cannot—or will not—continue to redevelop the property or that it cannot earn a reasonable profit from sale of the property at an amount other than $250 million.   If, after legislative change, plaintiff still can earn a reasonable rate of return, then the economic impact factor weighs against finding a taking.   *See Am. Council of Life Insurers v. District of Columbia Health Benefit Exch. Auth.*, No. 14 Civ. 1338 (BAH), 2014 U.S. Dist. Lexis 160038 *70 (D.D.C. Nov. 13, 2014) ("ACCLI"), *appeal docketed*, No. 14-7206 (April 15, 2015) (citing *Penn Central*, 438 U.S. at 136 (focusing on the ability to earn a

reasonable rate of return) and *Dist. Intown Properties Ltd. P'ship v. District of Columbia*, 198 F.3d 874, 884 (D.C. Cir. 1999) (rejecting takings claim and noting that mere loss of value is "irrelevant to whether the property as a whole can be operated at a sufficient profit even with the regulation")).

Plaintiff's regulatory taking claim fails because it has failed to plead facts that, if proven, would establish that a significantly detrimental economic impact befalls it from the regulation. There are no allegations in the Complaint that value of the property has been diminished, nor do any exist reflecting that Plaintiff has been denied a reasonable return on its investment.  As such, this first factor weighs in Defendant's favor.

## 2. The Complaint Alleges No Government Interference with any Reasonable Investment-Backed Expectation by Plaintiff

The second *Penn Central* factor is the regulation's alleged interference with the claimant's reasonable investment-backed expectations.  Taking challenges are to be rejected if they "[do] not interfere with interests that were sufficiently bound up with the reasonable expectations of the claimant to constitute 'property' for Fifth Amendment purposes."  *Penn Central*, 438 U.S. at 125 (citations omitted).  With this step of the *Penn Central* analysis, courts are to consider the reasonableness of a plaintiff's reliance on the property remaining free of the challenged regulation.

Under this prong, a property owner is required to demonstrate that it had an objectively reasonable expectation that the law would not change in the way made subject of the claim.  *See CCA Assocs. v. United States*, 667 F.3d 1239, 1247 (Fed. Cir. 2011).  Here, Plaintiff has failed to allege *any* facts suggesting such an expectation.  (*See generally* Compl.)  Even if Plaintiff had, however, those allegations would still fail as a matter of law.  Since its enactment, TOPA has been repeatedly amended to maximize preservation of lower income rental housing in the

District of Columbia. *See, e.g.,* D.C. Law 16-15 (broadening the definition of "sell" and "sale" under TOPA). Moreover, "[b]usinesses [like Plaintiff] that operate in an industry with a history of regulation have no reasonable expectation that regulation will not be strengthened to achieve established legislative ends." *Dist. Intown Props.,* 198 F.3d at 884.

Because the Complaint is silent on this issue, this second factor likewise weighs decisively in Defendant's favor. Plaintiff has not alleged—and cannot allege—a reasonable investment-backed expectation that TOPA would remain static into perpetuity.

### 3. The Character of the Government Action—Attempting to Preserve the Availability of Lower Income Rental Housing in the District of Columbia—Has a Legitimate Public Purpose.

The final *Penn Central* factor is the character of the government action. The analysis here depends primarily on whether the action "has a legitimate public purpose." *District Intown Props. Ltd. P'shp v. District of Columbia,* 198 F.3d at 879 (citing *Keystone Bituminous Coal Ass'n v. DeBenedictus,* 480 U.S. 470, 485 (1987)); *see also George Washington Univ.,* 391 F. Supp. 2d 109, 113-14 (D.D.C. 2005) ("To assess the character of the government's action, the central question is whether the regulation advances a 'common good' or 'public purpose.'"). There can be no dispute that this factor weighs decisively in favor of the District.

TOPA is a statute passed by the Council of the District of Columbia to address the "continuing housing crisis in the District of Columbia" and "severe shortage of rental housing available to citizens of the District of Columbia," particularly lower-income tenants. D.C. Code § 42-3401.01(a)(1)-(2). Against this backdrop, the Council's strengthening of tenants' bargaining position with the challenged amendments is entirely consistent with the longstanding public purposes of TOPA. Because the legislation demonstrates an attempt by the Council to ensure the continued availability of affording housing in the District (*see* Compl. ¶ 11), the legitimate public purpose of the TOPA amendments is established as a matter of law. *See*

28

*District Intown Props. Ltd. P'shp*, 198 F.3d at 879.   Accordingly, this final factor weighs conclusively in Defendant's favor.

In conclusion, Plaintiff has no claim for a Fifth Amendment taking, whether private or regulatory.   Where, as here, the government action "is otherwise a valid exercise of the town's police powers, the fact that it deprives the property of its most beneficial use does not render it unconstitutional."   *Goldblatt v. Town of Hempstead, N.Y.*, 369 U.S. 590, 592 (1962) (citations omitted).   Plaintiff's Fifth Amendment claim should also be dismissed.

## VI.     THE TOPA AMENDMENTS ARE NOT BILLS OF ATTAINDER

In Plaintiff's final swing at bat, it claims that the challenged legislation amounts to a bill of attainder.   This claim is without merit.   A bill of attainder is "a law that legislatively determines guilt and inflicts punishment upon an identifiable individual without provision of the protections of a judicial trial."   *Foretich v. United States*, 351 F.3d 1198, 1216 (D.C. Cir. 2003). It is comprised of three distinct elements, none of which is present here.   "To constitute a bill of attainder, a statute must: (1) apply with specificity to affected persons; (2) impose punishment; and (3) assign guilt without a judicial trial."   *Hettinga v. United States*, 677 F.3d 471, 477 (D.C. Cir. 2012).

A challenged statute satisfies the first element where it "describe[s] [the targeted class] in terms of conduct which, because it is *past conduct*, operates only as a designation of particular persons."   *Id.* (quoting *Communist Party of the United States v. Subversive Activities Control Bd.*, 367 U.S. 1, 86 (1961)).   A statute does not possess the requisite specificity where it has "open-ended applicability *i.e.*, one that attaches not to specified organizations but to described activities in which an organization may or may not engage."   *Id.*

The emergency legislation does not "single out" Plaintiff within the meaning of bill-of-attainder jurisprudence.[7]  *See id.* at 477-78 ("even a statute that affects only one person does not necessarily apply with the requisite specificity to qualify as a bill of attainder").  To be sure, Plaintiff's plans to redevelop its Museum Square property by making only the most token of efforts to comply with TOPA's bona fide offer requirement were a motivating factor that spurred the Council to action.  Plaintiff's actions highlighted the need to give clarity and content to a vague statute to protect against the ever-increasing risk that the District's low-income citizens will be priced out of their homes.  But the Council did not act in a way that regulated *only* Plaintiff's conduct.  Recognizing that these circumstances are bound to be repeated with other owners of other properties, the Council passed laws of general applicability that regulate the TOPA process when an owner seeks to redevelop, demolish, or otherwise cease use of a property for rental purposes.  *See id.* at 478 ("the mere fact that the 'class' currently happens to contain only one member does not transform an open-ended statute into a bill of attainder").  The challenged statutes thus address the conduct of all owners of apartment buildings in the District—not just Plaintiff.

But even if the emergency legislation possessed the requisite specificity, it does not punish Plaintiff for its past conduct.  *See BellSouth Corp. v. FCC*, 162 F.3d 678, 683 (D.C. Cir. 1998) ("the Supreme Court has *required* both specificity *and* punishment before it will find that a law constitutes a bill of attainder") (emphasis in original).  "Punishment" in this context means just that; "[m]erely because the consequences of legislation are burdensome does not, of course, make it a bill of attainder."  *Colorado Springs Prod. Credit Ass'n v. Farm Credit Admin.*, 695 F.

---

[7] Neither the Supreme Court nor the D.C. Circuit has stated with certainty whether the Constitution's prohibition on bills of attainder protects corporate entities, but the D.C. Circuit generally has assumed that it does.  *See, e.g.*, *Navegar, Inc. v. United States*, 192 F.3d 1050 (D.C. Cir. 1999); *BellSouth Corp. v. FCC*, 144 F.3d 58, 63 (D.C. Cir. 1998).

Supp. 15, 23 (D.D.C. 1988). To satisfy the punishment element, courts engage in a three-part inquiry:

> (1) whether the challenged statute falls within the historical meaning of legislative punishment; (2) whether the statute, "viewed in terms of the type and severity of burdens imposed, reasonably can be said to further nonpunitive legislative purposes"; and (3) whether the legislative record "evinces a congressional intent to punish."

*Selective Serv. Sys. v. Minn. Pub. Interest Research Group*, 468 U.S. 841, 852 (1984) (quoting *Nixon v. Adm'r of General Servs.*, 433 U.S. 425, 473, 475-76, 478 (1977)).

None of the relevant factors weigh in Plaintiff's favor. A requirement that the owner of an apartment building must make an offer not to exceed the property's current, appraised value before redeveloping is a far cry from the types of legislative actions historically characterized as punishment. "The historical meaning of legislative punishment includes a death sentence, imprisonment, banishment, confiscation of property and legislative bars to participation by individuals or groups in specific employments or professions." *Navegar, Inc. v. United States*, 192 F.3d at 1066 (citations omitted). Equally clear is that the emergency legislation has the salutary, non-punitive legislative purpose of preserving the dwindling housing options for the District's low-income residents. And the legislative record bears out that this was the Council's primary objective. (*See* Tenant Opportunity to Purchase Emergency Declaration Resolution of 2014, D.C. Res. 20-609, Sec. 2.)

Lastly, the TOPA amendments do not "assign guilt" to Plaintiff. *See Hettinga v. United States*, 677 F.3d at 477. The amendments make no determination as to the current value of Plaintiff's property; they merely prescribe a statutory framework to evaluate the value of a property through independent appraisals. And TOPA elsewhere provides that an aggrieved property owner may bring a civil action to enforce its rights under the statute if necessary. D.C.

Code § 42-3405.03.  Thus, the TOPA amendments do not adjudicate Plaintiff's rights or find it guilty.  Rather they prescribe a process subject to judicial review to ensure that offers of sale are fair and reasonable to all parties.

The Court therefore should dismiss Plaintiff's bill of attainder claim.

## CONCLUSION

As explained, Plaintiff's Complaint fails to plead a viable cause of action for any of the multiple constitutional claims alleged.  Some claims are flagrantly unviable, and all of them lack the necessary factual allegations to support even the most basic elements of the cause of action. Plaintiff's failure to plead viable claims, coupled with the significant standing problem identified above, is fatal to the case.  Accordingly, for the reasons articulated herein, the District respectfully requests the Court dismiss Plaintiff's Complaint in its entirety.

Respectfully submitted,

KARL A. RACINE
Attorney General for the District of Columbia

ELIZABETH SARAH GERE
Acting Deputy Attorney General
Public Interest Division

/s/ Toni M. Jackson
TONI M. JACKSON, D.C. Bar No. 453765
Chief, Equity Section

/s/ Chad Copeland
CHAD COPELAND, D.C. Bar No. 982119
Assistant Attorney General
441 Fourth Street, N.W.
Sixth Floor South
Washington, DC 20001
Telephone: (202) 724-6623
Facsimile: (202) 741-8880
Email: chad.copeland@dc.gov

/s/ Bradford C. Patrick
BRADFORD C. PATRICK, D.C. Bar No. 1004979
Assistant Attorney General
441 Fourth Street, N.W.
Sixth Floor South
Washington, DC 20001
Telephone: (202) 724-6627
Facsimile: (202) 741-0599
Email: bradford.patrick@dc.gov

**TABLE OF EXHIBITS**

Exhibit    Document

A          Tenant Opportunity to Purchase Emergency Amendment Act of 2014, D.C. Act 20-434

B          Tenant Opportunity to Purchase Temporary Amendment Act of 2014, D.C. Act 20-453

C          Tenant Opportunity to Purchase Congressional Review Emergency Amendment Act of 2014, D.C. Act 20-581

D          Tenant Opportunity to Purchase Emergency Declaration Resolution of 2014, D.C. Res. 20-609

E          TOPA Bona Fide Offer of Sale Clarification Amendment Act of 2015, D.C. Bill 21-0147

F          Order, *Museum Square Tenants Assoc., Inc. v. Parcel One Phase One Assoc., LLP*, No. 2014 CA 6869 R, April 22, 2015

G          Order and Final Judgment, *Museum Square Tenants Assoc., Inc. v. Parcel One Phase One Assoc., LLP*, No. 2014 CA 6869 R, May 13, 2015

H          Aaron Weiner, "Bull in Chinatown: Developer Tells Section 8 Tenants to Pay Up or Get Out, *Washington City Paper*, Jul. 9, 2014

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| **PARCEL ONE PHASE ONE** | ) | |
| **ASSOCIATES, L.L.P.,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | **Civil Action No. 15-00369 (CRC)** |
| **v.** | ) | |
| | ) | |
| **DISTRICT OF COLUMBIA,** | ) | |
| | ) | |
| **Defendant.** | ) | |
| _____ | ) | |

### ORDER

Upon consideration of Defendant District of Columbia's Motion to Dismiss the Complaint Pursuant to Fed. R. Civ. P. 12(b)(1) and 12(b)(6), and the entire record herein, it is this _____ day of _____, 2015 hereby

**ORDERED** that the Defendant's Motion is **GRANTED**; and it is further

**ORDERED** that this action is dismissed with prejudice.


_____
HON. CHRISTOPHER R. COOPER
United States District Court
District of Columbia

Copies to:
All Counsel of Record